## REID-MURDOCK CO. v. ALTON MERCANTILE CO.

(Circuit Court of Appeals, Eighth Circuit. March 5, 1923.)

### No. 6146.

**Sales ⚖☞172—Defendant held liable for breach of contract for purchase of sugar.**

A contract for sale of sugar by plaintiff to defendant for future delivery *held* to have been complied with by plaintiff by shipments as soon as cars could be obtained, the contract providing that it should not be liable for delay caused by its inability to obtain cars, and refusal of defendant to accept such shipments *held* a breach.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action at law by the Alton Mercantile Company against the Reid-Murdock Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. F. Wilson, of Oklahoma City, Okl. (Wilson, Tomerlin & Threlkeld, of Oklahoma City, Okl., on the brief), for plaintiff in error.

P. C. Simons, of Enid, Okl. (L. E. McKnight and R. W. Simons, both of Enid, Okl., on the brief), for defendant in error.

Before STONE, Circuit Judge, and TRIEBER and JOHNSON, District Judges.

TRIEBER, District Judge. The parties will be referred to as they appeared in the court below; the Alton Mercantile Company as the plaintiff, and the Reid-Murdock Company as defendant.

The plaintiff instituted this action against the defendant to recover damages alleged to have been sustained by reason of a breach of a contract made on May 26, 1920, for the sale by it to the defendant of 2,000 bags of granulated sugar. The material allegations in the complaint are that the plaintiff in 1919 entered into a contract with J. Aaron & Co., of New Orleans, La., for the purchase of 5,700 barrels of plantation granulated sugar, each barrel containing approximately 350 pounds, and on February 13, 1920, it purchased 12,000 bags of plantation granulated sugar from them for delivery in the months of February, March, April, May, June, and July, 1920; the

said J. Aaron & Co. being refiners of raw sugar. By that contract it was stipulated that shipping instructions for the sugar were to be furnished by the buyer to Aaron & Co., who were to make and deliver the sugar under the contract to the carrier, but were not to be responsible for delay in delivering within the time specified, if caused by inability to secure cars for loading, or in the event of fire, breakdown of machinery, strikes, or other causes beyond their control, the seller to have the privilege of delivering either in barrels or 100 pound bags; that the contract between plaintiff and defendant was entered into on May 26, 1920, after its contracts with Aaron & Co., and while they were in force, and contained a provision, "Subject to terms and conditions of seller's contract with refiners;" that after the execution of the contract between plaintiff and defendant on May 26, 1920, the defendant on June 2, 1920, furnished shipping instructions under said contract, to the Meinarth Brokerage Company, agent of the defendant for delivery to this plaintiff, shipment to be made to Hammond, Ind.; that although said instructions are dated May 26, 1920, they were in fact delivered to the Brokerage Company, at Chicago, Ill., for delivery to the plaintiff on June 2, 1920, and received by the plaintiff on June 9, 1920; that immediately upon receipt of the shipping instructions, on the same day the plaintiff telegraphed Aaron & Co. to make shipment of two cars of sugar to the defendant on the May allotment; that Aaron & Co. immediately wired plaintiff that two cars of sugar had already been shipped by it on June 8, 1920, to the plaintiff at Enid, Okl., and that by reason of the inability to secure cars and inability to secure raw sugar, they had been unable to make more prompt delivery of the sugar; that the plaintiff immediately attempted to divert to the defendant said two cars of sugar to Hammond, Ind., but by reason of strikes, in the city of Chicago, Ill., and Hammond, Ind., and the embargo on all railroad freight to said places, the cars could not be diverted then to Hammond, Ind., at which place the defendant had ordered the sugar to be shipped; that on June 15, 1920, Aaron & Co. loaded and billed to the defendant at Chicago, Ill., 143 barrels of sugar for the June delivery and delivered the same to Morgan's Louisiana & Texas Railroad & Steamship Company, with directions to carry and deliver the same; that on June 16, 1920, Aaron & Co. loaded and billed to the defendant at Chicago, Ill., a car containing 143 barrels of sugar, and delivered the same to the same railroad with directions to deliver it to the Illinois Central Railroad at New Orleans for carriage to the defendant at Chicago; that these shipments were made to the defendant as soon as possible after the receipt of the said shipping instructions, and the delay was caused by reason of the refiner, Aaron & Co., not being able to obtain raw sugar, and not being able to obtain from the railway cars in which to ship the same, which caused the delays on the June shipments until June 15 and 16. Had the defendant furnished shipping instructions at the time of the execution of the contract, the shipments could have been made promptly as there was no embargo at that time; that the defendant refused to accept and pay for the sugar when tendered to it, and it was thereupon sold to the best advantage

by the plaintiff, but, the market in the meantime having considerably declined, the proceeds of said resale were less, the difference being the amount sued for.

The answer of the defendant denied that the memorandum or confirmation of contract attached as an exhibit to the complaint constituted the contract between the parties. It alleges the facts to be that two or three days prior to the 26th day of May, 1920, it entered into an oral agreement with the plaintiff acting by and through its duly authorized agent, the Meinarth Brokerage Company of Chicago, Ill., for the purchase at its plant at Hammond, Ind., of 2,000 bags of sugar, 1,000 bags to be shipped in May, and 1,000 to be shipped in June, 1920, at the price mentioned in the contract, which was considerably higher than the market price at that time, but it was willing to pay the advanced price to supply its needs to take care of perishable crops; that the plaintiff, for said special consideration, agreed to ship 1,000 bags of sugar during the month of May and another 1,000 during the month of June; that thereafter for the purpose of evidencing the fact of said agreement and contract, said defendant reduced to writing a memorandum thereof, and duly signed the original contract and delivered it to the plaintiff's agent in the city of Chicago, on the 26th day of May, 1920; that on June 2, 1920, the plaintiff through its agent, the said brokerage company, caused to be delivered to this defendant a memorandum of said agreement, a correct copy of which is filed as Exhibit A to plaintiff's complaint, but upon said memorandum being submitted to the defendant, it objected to that portion thereof, which provided, "subject to terms and conditions of seller's contract with refiners." It is then alleged that the first consignment of said sugar which was to be delivered during the month of May was not shipped from the state of Louisiana until about the 16th day of June, 1920, and did not arrive until June 26, 1920, and that no May shipments were ever made. There was also a cross-petition, claiming damages for the breach of the contract.

A trial by jury was waived by written stipulation, and the cause tried to the court. The court made the following special findings of fact:

"The transaction was initiated at Chicago by conversation between the defendant, represented by Mr. Wilson, and the brokerage company, represented by Mr. Johnson. Their negotiations did not amount to a contract. Mr. Wilson knew very well from his long experience that he was simply getting information that he might buy the sugar through the brokerage company from a seller, who certainly had imposed conditions and terms of sale in placing the matter in the hands of the brokerage firm. This evidence of negotiations does not establish the terms of the sale contract, and I feel very certain that the defendant would expect the confirmation to contain the terms of sale and to abide by the same surely enough any time the confirmation was received. The only thing which the oral negotiations would cover would be the kind of merchandise, the quantity, time of shipment, and the price. Now, the brokerage company had these terms of sale from the plaintiff in this case, and incorporated them in the confirmation, which completed the contract. The confirmation provided that the sugar was bought in the quantity of 2,000 bags, that the shipments were to be made in May and July—erroneously stating July, instead of June. The confirmation contained the price and the destination for the delivery.

"The particular controversy has been about these terms or conditions as to the delivery of the sugar. Everything else seems to have been a matter of harmony between the parties. The defendant sent the paper, Exhibit Y, to the brokerage company, specifying the price and quantity and the shipments, May and June. As I have said, the confirmation from the brokerage company is the same, except it represented the shipments to be in May and July. Then later a corrected confirmation was sent out, substituting June for July. I do not regard this error as of any materiality in the case, because there was no July shipment contemplated, and the correction was long in advance of that month. The more pressing point would be with reference to the shipment in May.

"There is some controversy as to when the defendant sent the shipping directions contained in Exhibit Y. I don't think it was the purpose of that exhibit to accomplish anything but simply to give the shipping directions. Just when Exhibit Y to that effect was sent by defendant is a matter of controversy in the evidence. I feel bound to find, and I think from a preponderance of the evidence, that it was not sent out in May. This I think is required by the stamp of receipt, June 2d, placed upon it by the brokerage company. It seems to me it must have been sent out on about that date. I think it was after May, and it puts out of question in this case the possibility of any shipment by the plaintiff in May.

"If shipping directions are given, where it is impossible to make shipment, what is the result? The parties then are required to do a thing within a reasonable time under all the circumstances in the case. Here was an absolute order for merchandise. The plaintiff was anxious to ship no doubt, and there was no reason that I can see why the plaintiff should not go ahead and proceed with diligence to meet the order. As I have said, I think the brokerage company very properly incorporated in the confirmation all of the terms of delivery that were given to the brokerage company by the plaintiff in this case. The plaintiff in placing this property for sale in the hands of a broker certainly had a right to impose such conditions as were desired, and the brokerage company had no right to confirm a sale except upon those conditions. It happened so often in the defendant's business there could be no question about it. I feel very sure the plaintiff could not expect any confirmation without conditions of sale and delivery as included in the confirmation from the brokerage company. I am bound to find that the contract of sale was made as the plaintiff claims in this case, and I am not impressed that the defendant was misled in any way, or that there is any possibility of escape from the binding effect of the contract as claimed by the plaintiff. After having reached this conclusion, then there remains one other question in point.

"The plaintiff endeavored to divert cars to defendant in order to speed delivery, and failed. I don't know whether the plaintiff could have exercised more diligence through some other railroad company than the Rock Island, but there was no absolute requirement that cars be diverted to defendant. That was a matter of diligence. But I think the effort that was made was ordinarily diligent, and that the procurement of two other cars and causing them to go forward so promptly, as far as the plaintiff is concerned, satisfied the obligation of the contract on the plaintiff's part. This contract was made specifically on the condition that the plaintiff should be relieved for delay of the refiner. It is impossible for me to find that the plaintiff delayed in that particular, and I feel required to find from the evidence that the plaintiff was quite diligent and sent these cars on with all reasonable dispatch.

"Now, we have the situation that the defendant did not accept it. We may suspect that there were some other reasons, aside from the failure to carry out the contract, but there is no evidence on which to find that the decline in the market had anything to do with this case. I would not like to indulge that view, because of the high standing of the defendant company. We know so much about it we must put out of consideration as to reputable concern. So I think the conclusion ought to be put on the ground that the defendant considered that the contract was not made as the plaintiff claims, but as the defendant claims, and was not executed in accordance with defendant's understanding of it. But this is a mistake. I think the plaintiff made a definite

and certain showing as to its contract, and my finding will be in favor of the plaintiff for the recovery in this case. As I understand it, there is no dispute as to the amount, and the recovery will be as prayed in the petition and the undisputed evidence, with interest to be added from the time of the breach at 6 per centum, subject, however, to a credit of the full amount demanded in the cross-petition in this case, with a like rate of interest from the time that demand fell due, July 14, 1920."

The learned counsel for plaintiff in error, in his oral argument, frankly admitted that, although there was some conflicting evidence, there was substantial evidence to warrant the findings made by the learned trial judge.

It is proper to add that the vice president of the defendant, in his testimony, said that the sole reason for refusing to accept the shipment was that it was not started in May, although, as found by the learned trial judge, the shipping instructions were not received by the brokers until June 2d, and by the plaintiff until June 9th. As the contract of sale expressly provided "no liability for acts of the United States government beyond the seller's control," and "seller not responsible for delay in delivery within specified time if caused by inability to secure cars of loading," the plaintiff cannot be held responsible for the delay caused by refusal of the railroad company to divert the cars for defendant to Hammond, Ind., due to the embargo at that time. Nor can it be held responsible for making no shipments in the month of May, when defendant's shipping order was not sent by it to the plaintiff, or even its broker, in time to make a shipment, within that month.

Upon the findings of the court the plaintiff was clearly entitled to a judgment, and, as this is the only question before us, the judgment is affirmed.